**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| GOOD MAN PRODUCTIONS, INC.,　　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　Plaintiff,　　　　　　) | Civil Case No.: <u>8:14-cv-02998-JSM-AEP</u> |
| 　　　　　　　　　　　　　　　　　　) | |
| v.　　　　　　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |
| JOHN MAKAR,　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　Defendant.　　　　　　) | |
| _____) | |

**AMENDED COMPLAINT-ACTION FOR DAMAGES FOR**
**PROPERTY RIGHTS INFRINGEMENT**

　　　　Plaintiff, Good Man Productions, Inc. ("Plaintiff"), sues Defendant, John Makar ("Defendant"), and alleges:

**Introduction**

　　　　1.　　　This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, *et seq.* (the "Copyright Act").

　　　　2.　　　Defendant is an online copyright infringer and BitTorrent user.　Indeed, Defendant's IP address as set forth on Exhibit "A" was used without authorization to illegally distribute the copyrighted work owned by Plaintiff listed on Exhibit "B."

　　　　3.　　　Plaintiff is the registered owner of the copyrighted audiovisual work set forth on Exhibit B (the "Copyright-in-Suit").

**Jurisdiction and Venue**

　　　　4.　　　This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).

5.     Plaintiff used proven IP address geolocation technology which has consistently worked in similar cases to ensure that the Defendant's acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District and, therefore, this Court has personal jurisdiction over the Defendant because: (i) Defendant committed the tortious conduct alleged in this Complaint in this State, and (ii) Defendant resides in this State and/or (iii) Defendant has engaged in substantial and not isolated business activity in this State.

6.     The geolocation technology used by Plaintiff has proven to be accurate to the District level in over 99% of the cases filed by undersigned.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (ii) the Defendant resides (and therefore can be found) in this District and resides in this State; additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant or Defendant's agent resides or may be found in this District.

**Parties**

8.     Plaintiff is corporation organized and existing under the laws of the State of California, and has its principal place of business located at 100 Universal City Plz, #5183, Universal City, CA 91608.

9.     Defendant, John Makar, is an individual residing at 27702 Raven Brook Road, Wesley Chapel, FL 33544.

2

**Factual Background**

I.    *Good Man Productions, Inc. Holds the Copyright to a Widely Infringed Popular Movie*

10.    Plaintiff owns the copyright to the film "A Good Man" (the "Film"), an action movie starring Steven Seagal.

11.    The Film was produced with an estimated budget of $7,000,000.00 and was shot in various locations across the globe.

12.    The Film is being widely infringed through the BitTorrent peer-to-peer file sharing network.

II.    *Defendant Used the BitTorrent File Distribution Network to Infringe Plaintiff's Copyrights*

13.    The BitTorrent file distribution network ("BitTorrent") is one of the most common peer-to-peer file sharing systems used for distributing large amounts of data, including, but not limited to, written publications, audiovisual works and other digital media files.

14.    BitTorrent's popularity stems from the ability of users to directly interact with each other in order to distribute a large file without creating a heavy load on any individual source computer and/or network.  The methodology of BitTorrent allows users to interact directly with each other, thus avoiding the need for intermediary host websites which are subject to DMCA take-down notices and potential regulatory enforcement actions.

15.    In order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces.  Users then exchange these pieces among each other, instead of attempting to distribute a much larger digital file.

16.    After the infringer receives all of the pieces of a digital media file, the infringer's BitTorrent client software reassembles the pieces so that the file may be opened and utilized.

17.     Each piece of a BitTorrent file is assigned a unique cryptographic hash value.

18.     The cryptographic hash value of the piece ("piece hash") acts as that piece's unique digital fingerprint.  Every digital file has one single possible cryptographic hash value correlating to it.  The BitTorrent protocol utilizes cryptographic hash values to ensure each piece is properly routed among BitTorrent users as they engage in file sharing.

19.     The entirety of the digital media file also has a unique cryptographic hash value ("file hash"), which acts as a digital fingerprint identifying the digital media file (e.g., a video).  Once infringers complete downloading all pieces which comprise a digital media file, the BitTorrent software uses the file hash to determine that the file is complete and accurate.

20.     Plaintiff's infringement detection company, Excipio GmbH ("Excipio"), established a direct TCP/IP connection with Defendant.

21.     Excipio downloaded part of a digital media file (the "Infringing File") from Defendant.  The Infringing File is a copy of Plaintiff's Film.

22.     Plaintiff is the author of the Film in the Infringing File which is registered with the U.S. Copyright Office.  *See* Exhibit B for the Film's copyright registration information.

23.     Plaintiff did not authorize its copyrighted work to be distributed via the BitTorrent protocol.  Instead, the initial seeder illegally uploaded the work to BitTorrent and distributed it to numerous other individuals.

24.     Defendant downloaded all of the pieces of the Infringing File.  Thereafter, Defendant's BitTorrent client assembled them into a viewable movie file.

25.     Excipio also downloaded a full copy of the Infringing File and reviewed it.  Excipio further reviewed the original Film as provided by Plaintiff and confirmed that the Infringing File is identical, or substantially similar, to the corresponding original work.

4

26.     At no time did Excipio upload Plaintiff's copyrighted content to any other BitTorrent user.

27.     Although there are multiple infringing transactions from Defendant's IP address, the most recent infringing transaction recorded by Excipio (as of the date of this filing) is set forth on Exhibit A.

28.     Exhibit B lists the registration number, registration date, and date of first publication for the Film.

29.     Each infringing transaction between Defendant's IP address and Excipio is recorded in a PCAP.  A PCAP is akin to a video recording.  Here, the recording is of a transaction between the infringer's computer and Excipio's computer.  Through each transaction, Defendant distributed a piece of the Infringing File.  The PCAP shows Defendant's IP address, and the piece that was distributed.  Excipio verified that the piece that was distributed belongs to the Infringing File by calculating its hash value.

## Miscellaneous

30.     All conditions precedent to bringing this action have occurred or been waived.

31.     Plaintiff has retained counsel and is obligated to pay said counsel a reasonable fee for its services.

## COUNT I
## Direct Infringement Against Defendant

32.     The allegations contained in paragraphs 1-31 are hereby re-alleged as if fully set forth herein.

33.     Plaintiff is the owner of the copyright which covers an original work of authorship.

34.     By using BitTorrent, Defendant copied and distributed the constituent elements of

the copyrighted work.

35.     Plaintiff did not authorize, permit or consent to Defendant's distribution of its work.

36.     As a result of the foregoing, Defendant violated Plaintiff's exclusive right to:

(A)     Reproduce the work in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B)     Redistribute copies of the work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C)      Perform the copyrighted work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the work's images in any sequence and/or by making the sounds accompanying the work audible and transmitting said performance of the work, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publically" perform); and

(D)      Display the copyrighted work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the work nonsequentially and transmitting said display of the work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publically" display).

37.     Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

**WHEREFORE**, Plaintiff respectfully requests that the Court:

(A)     Permanently enjoin Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted work;

(B)     Order that Defendant delete and permanently remove the digital media files relating to Plaintiff's work from each of the computers under Defendant's possession, custody or

control;

(C)     Order that Defendant delete and permanently remove the infringing copies of the

work Defendant has on computers under Defendant's possession, custody or control;

(D)     Award Plaintiff statutory damages per infringed work pursuant to 17 U.S.C.

§ 504-(a) and (c);

(E)     Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C.

§ 505; and

(F)     Grant Plaintiff any other and further relief this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.


Respectfully submitted,

By: */s/M. Keith Lipscomb*
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229
*Attorneys for Plaintiff*